T.C. Memo. 1999-57


UNITED STATES TAX COURT


WILLIAM E. LEVESQUE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22348-95.                    Filed March 1, 1999.


William E. Levesque, pro se.

Carmino J. Santaniello, for respondent.


MEMORANDUM OPINION

COLVIN, Judge:  Respondent determined a deficiency in petitioner's income tax of $1,836 for 1992.  The issues for decision are:

1.   Whether pension payments of $7,101[1] that petitioner received from his former municipal employer (Pawtucket, Rhode Island) in 1992 are excludable from gross income under section

_____

[1] This amount is rounded to the nearest dollar.

104(a)(1) as amounts received under a worker's compensation act or a statute in the nature of a worker's compensation act. We hold that they are not.

2.  Whether the $7,101 is excluded from income for 1992 on the grounds that Pawtucket and respondent violated the Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, sec. 2, 104 Stat. 328 (current version at 42 U.S.C. sec. 12101 (1994)). We hold that it is not.

3.  Whether including the $7,101 in petitioner's income is unfair discrimination. We hold that it is not.

The parties submitted this case fully stipulated. Rule 122. Section references are to the Internal Revenue Code. Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

A.  Petitioner

Petitioner lived in the city of Pawtucket, Rhode Island (Pawtucket), when he filed the petition in this case. He was born on May 11, 1935.

Petitioner began employment as a firefighter with Pawtucket on May 14, 1961. During his career as a firefighter, petitioner received several promotions and rose to the rank of lieutenant. He was a member of the International Association of Firefighters, Local No. 1261 (the union) from 1961 to September 4, 1992.

B.    Petitioner's Disability Pension

Pawtucket and the union had a collective bargaining agreement that covered July 1, 1991, to June 30, 1993 (the firefighter agreement).  As a member of the union, petitioner was entitled to receive pension benefits under article II, sections 59-14 to 59-28.1 of the Pawtucket City Code, entitled "Firefighters' and Police Pension Fund".

Section 59-20 of the Pawtucket City Code provides that a firefighter may retire after completing 20 years of service and receive a regular service pension equal to 50 percent of his or her average 3 highest years' salary.  Firefighters who retire after more than 20 years of service may receive an additional retirement benefit under section 59-21 of the Pawtucket City Code of 2 percent for each year of service over 20 years, but not more than an additional 5 years, with a maximum retirement benefit of 60 percent.  The firefighter agreement has identical provisions.

Under section 59-24.A of the Pawtucket City Code, police officers and firefighters who become totally and permanently disabled may receive disability pensions equal to 66-2/3 percent of their highest years' salaries.  However, section 59-24.B of the Pawtucket City Code provides that a disability pension received under section 59-24.A of the Pawtucket City Code converts to a regular service pension when the employee reaches his or her normal retirement date "as though he or she had not been disabled."  Thus, an employee who becomes disabled after completing 25 years of service is not entitled to a 66-2/3-

percent disability pension and instead receives a 60-percent pension under section 59-21 of the Pawtucket City Code. The firefighter agreement has identical provisions.

Petitioner could not work from January 2, 1991, to March 12, 1992, because of a work-related injury. During that time, petitioner received his regular wages from Pawtucket under the firefighter agreement.

On March 12, 1992, Martin E. Joyce, Jr. (Joyce), Pawtucket's director of human resources, notified petitioner that he would automatically be placed on a service retirement if he did not return to work by July 2, 1992. Petitioner never returned to work as a firefighter.

On March 20, 1992, Joseph E. Burns (Burns), Pawtucket's acting fire chief, wrote a letter to petitioner in which he stated in part:

> You are hereby notified that you have been out injured since 1/2/91. On July 2, 1992 you will reach 18 months on disability and you have to return to work prior to 20 months of disability or you will be placed on service retirement.

On August 18, 1992, Burns wrote a letter to petitioner in which he said:

> On September 2, 1992, your 20 months on disability will be exhausted.
>
> According to the contract agreement between the City of Pawtucket and Local #1261, disability pension benefits only apply to those with under 25 years of service. Because you have over 31 years of service with the fire department, please contact the Human Resource Department to file for your retirement in accordance with the benefits of your contract.

On September 1, 1992, Raymond W. Houle, Jr., Pawtucket's director of public safety, wrote a letter "to whom it may concern" in which he stated:

> In accordance with the Collective Bargaining Agreement between the City of Pawtucket and Local 1261, International Association of Fire Fighters, Article XV, Section 3 and Section 6 and also the Charter of the City of Pawtucket, specifically, the revised ordinances, Chapter 23, Section 23-2.2 Paragraph B.
>
> Lieutenant William E. Levesque is hereby placed on disability retirement on the normal retirement list for Fire Fighters due to fact that he has been out 18 months on a service connected disability. Please contact the Human Resources Division to fill out all necessary paperwork in order that it can be processed in a timely manner.

On September 4, 1992, Jack Rahill (Rahill), Pawtucket's director of finance, wrote to Joyce about petitioner's service retirement. Rahill stated in part:

> Pursuant to c.1406 of the ordinance of the City of Pawtucket, approved 06/29/73 and the current bargaining agreement between the City of Pawtucket and the I.A.F.F., the following figures are submitted for your records. To insure accuracy please compare this data with your calculations and notify me as soon as possible of any errors in omission, calculations or interpretation.

Rahill calculated petitioner's pension benefits on the basis of the following information. On September 4, 1992,[2] petitioner had 31 years and 3 months of service as a firefighter. Pawtucket awarded to petitioner a pension under section 59-21 of the Pawtucket City Code equal to 60 percent of his average 3 highest years' salary because he had more than 25 years of service when

_____

[2] The parties stipulated that petitioner had 31 years and 3 months of service as of Sept. 4, 1991. However, Exhibits 5-E and 7-G show that the correct date is Sept. 4, 1992.

he retired.  Rahill calculated that petitioner's annual pension benefit was $22,038.37 ($36,730.62 x 60%).  His monthly pension benefit was $1,836.53.

On September 8, 1992, Joyce wrote a letter to Benefit Plan Services of State Street Bank & Trust Co. about petitioner's retirement, stating:

> Mr. William E. Levesque has retired from the City of Pawtucket effective September 4, 1992.
>
> Mr. Levesque is entitled to a partial check in the amount of $1,591.72 for the month of September only and all subsequent checks will be for the full pension amount of $1,836.53.
>
> Please forward Mr. Levesque's pension checks to:
>
> 119 Hunts Avenue
> Pawtucket, RI  02861
>
> Mr. Levesque's monthly pension amount is $1,836.53.  He will receive a cost of living every September 1st of 1.5%.  Mr. Levesque has elected to have no Federal or State Tax deductions from his monthly pension check.
>
> If you have any questions pertaining to this correspondence, please contact this office.

In 1992, petitioner received pension payments from Pawtucket totaling $7,101.  That amount equaled 60 percent of his pay from his retirement date to December 31, 1992.

C.   Petitioner's Tax Return

Petitioner timely filed his 1992 Federal income tax return in which he reported income and deductions for the taxable year 1992 using the cash receipts and disbursements method of accounting.  Petitioner attached a copy of Form 1099-R to his 1992 Federal income tax return.  It showed that he had received the $7,101.  Petitioner did not include any of that amount in his

1992 gross income. He attached the following statement to his return:

> Compensation received by the taxpayer, a firefighter injured in the line of duty, and paid as mandated by section 45-19-1 of the General Laws of Rhode Island, 1954 as amended, is excluded from gross income under I.R.C. section 104(a) and regulation section 1.104-1(b).

## Discussion

### A. Exclusion Under Section 104(a)(1)

#### 1. Background

Respondent determined and contends that petitioner's pension payments of $7,101 for 1992 should be included in income. Petitioner contends that his pension payments of $7,101 for 1992 are excludable from gross income under section 104(a)(1). We agree with respondent.

Section 104(a)(1) provides that gross income does not include amounts received under worker's compensation acts as compensation for personal injuries or sickness. For benefits to qualify for exclusion under section 104(a)(1), the worker's compensation act at issue must restrict benefits to work-related personal injuries or sickness. See Rutter v. Commissioner, 760 F.2d 466, 468 (2d Cir. 1985), affg. T.C. Memo. 1984-525; Take v. Commissioner, 82 T.C. 630, 634 (1984), affd. 804 F.2d 553 (9th Cir. 1986); Haar v. Commissioner, 78 T.C. 864, 868 (1982), affd. per curiam 709 F.2d 1206 (8th Cir. 1983). If a statute under which benefits are paid does not restrict benefits to work-related personal injuries or sickness, the fact that the claimant was injured on the job or in the line of duty is irrelevant. See

Rutter v. Commissioner, supra; Green v. Commissioner, T.C. Memo. 1994-264, affd. 60 F.3d 142 (2d Cir. 1995); Curmon v. Commissioner, T.C. Memo. 1991-432.  Disability payments received under a collective bargaining agreement are not excludable under section 104(a)(1).  See Rutter v. Commissioner, supra at 468; McDowell v. Commissioner, T.C. Memo. 1997-500.

Petitioner bears the burden of proving that respondent's determination is incorrect.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

2.  Analysis

Petitioner did not include in income the $7,101 in pension payments that he received from Pawtucket in 1992.  Petitioner contends that the disability payments were in lieu of worker's compensation because he had been injured on the job and forced to retire.  Petitioner contends that he is being penalized for 31 years of dedicated service because he can no longer work because of job-related injuries.  We disagree.  Those payments were at the regular retirement rate of 60 percent of petitioner's average 3 years' highest salary under section 59-21 of the Pawtucket City Code because he had more than 25 years of service when he retired.  His pension payments were not made under a statute in the nature of a worker's compensation act, and section 104(a)(1) does not apply.  Section 59-21 of the Pawtucket City Code did not provide that petitioner would be paid only if he had work-related injuries.  Thus, the pension payments of $7,101 that were made under section 59-21 of the Pawtucket City Code are not in lieu of

worker's compensation for purposes of section 104(a)(1). See Rutter v. Commissioner, supra; Green v. Commissioner, supra; Curmon v. Commissioner, supra.

In Mabry v. Commissioner, T.C. Memo. 1985-328, and Wiedmaier v. Commissioner, T.C. Memo. 1984-540, affd. 774 F.2d 109 (6th Cir. 1985), the taxpayers initially received disability payments but were later transferred to a general service pension computed on the basis of the number of years of service. We held that the benefits became taxable when each taxpayer was transferred to a general pension. Petitioner did not initially receive 66-2/3-percent disability pension payments, and so this situation is, if anything, stronger for respondent than that in Mabry v. Commissioner, supra, or Wiedmaier v. Commissioner, supra.

In Picard v. Commissioner, ___ F.3d ___ (9th Cir., Jan. 26, 1999), revg. T.C. Memo. 1997-320, the U.S. Court of Appeals for the Ninth Circuit held that pension benefits paid to a disabled worker remained excludable under section 104 where the pension was reduced, but the taxpayer was not transferred from a disability pension to a general pension. We need not consider the holding of the Court of Appeals in Picard because petitioner's pension benefit was paid under the general pension provisions of the Pawtucket City Code.

Petitioner contends that we should treat his payments as if they were in lieu of worker's compensation because on June 22, 1995, the Pawtucket City Council amended the ordinance to state that disability benefits are in lieu of worker's compensation.

We rejected a similar argument in <u>McDowell v. Commissioner</u>, <u>supra</u>. In <u>McDowell</u>, a Pawtucket firefighter who had been injured on the job in 1989 contended that the June 22, 1995, amendment retroactively made the Pawtucket City ordinance a worker's compensation statute under section 104(a)(1). We concluded in <u>McDowell</u>: "Even if the amendment were to be given retrospective effect, it would not cause the ordinance to be a statute in the nature of a worker's compensation act." The taxpayer's argument failed in <u>McDowell</u> where retroactivity of the amendments to Pawtucket disability pension ordinances was at issue. Petitioner's retroactivity argument is even less persuasive here because he was paid under the regular service pension ordinance.

B.    <u>Americans with Disabilities Act</u>

Petitioner contends that the payments of $7,101 should not be included in income in 1992 because he has suffered economic discrimination, and that he had decreased purchasing power because of his injuries in violation of ADA section 2, 42 U.S.C. section 12101. Petitioner contends that Pawtucket's and respondent's policies discriminate against disabled persons. We disagree. Petitioner cited no authority that the ADA, and not the Internal Revenue Code, controls whether petitioner's pension payments are taxable. Even if he did, petitioner would not be entitled to relief under the ADA here. ADA section 202, 42 U.S.C. section 12132, provides:[3]

---

[3] The Americans with Disabilities Act of 1990, Pub. L. 101-336, sec. 203, 104 Stat. 337 (current version at 42 U.S.C. sec.
(continued...)

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

To establish that the ADA was violated, petitioner must show that: (1) He was disabled, (2) he was denied a public benefit, and (3) the denial was by reason of his disability. See Kornblau v. Dade County, 86 F.3d 193, 194 (11th Cir. 1996).

Petitioner contends that he was denied a public benefit, i.e., the right to exclude income, because he is disabled. We disagree. The pension which Pawtucket pays to petitioner under section 59-21 of the Pawtucket City Code was not based on disability. The ADA was not violated because petitioner was not denied a public benefit by reason of his disability. More importantly, the taxation of his pension benefits is governed by the Internal Revenue Code, not the ADA.

C.  Whether Treatment of Petitioner Is Discriminatory

Petitioner contends that respondent's determination is unfair because payments received by other firefighters throughout the country who have been injured on the job have been excluded from income. There is no evidence in the record showing how other firefighters were treated or the legal structure of their

_____

[3](...continued)
12133 (1994)) provides:

The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.

benefits.  Petitioner cited no authority that anyone whose benefits were structured like his was treated differently than our holding here.  We conclude that petitioner's discrimination claim lacks merit.

D.    Conclusion

We conclude that the pension payments of $7,101 that petitioner received in 1992 are not excludable from income under section 104(a)(1).

To reflect the foregoing,

Decision will be entered

for respondent.