# United States Tax Court

T.C. Summary Opinion 2022-23

ELIJAH SERVANCE AND CORLISS SERVANCE,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 1587-18S.                    Filed November 21, 2022.

————

Elijah Servance and Corliss Servance, pro sese.

*Brian M. Howell*, for respondent.

## SUMMARY OPINION

COPELAND, *Judge*: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated January 2, 2018, the Internal Revenue Service (IRS or respondent) determined a deficiency in petitioners' federal income tax of $7,344 and a section 6662(a) accuracy-related penalty of $1,469 for tax year 2015.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are:

1. whether the Servances' gross income includes unreported tier 1 railroad retirement benefits of $28,628 paid to Elijah Servance during 2015; and

2. whether the Servances' gross income includes unreported long-term disability payments of $4,406 purportedly made by Hartford Life Insurance Co. (Hartford) to Mr. Servance during 2015.

*Background*

Some facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. When the Petition was timely filed, the Servances were residents of Connecticut.

Mr. Servance worked for 33 years for the Metro-North Railroad (Metro-North) until his retirement in 2012. He retired following diagnosis and surgery for colon cancer.

Upon his retirement, Mr. Servance applied for long-term disability benefits from the U.S. Railroad Retirement Board (RRB) on the basis of his cancer diagnosis and treatment. His application was granted on December 19, 2012. During 2015 the RRB paid Mr. Servance $28,628 in tier 1 railroad retirement benefits and reported these benefits (among others) on Form SSA–1099, Social Security Benefit Statement, issued to Mr. Servance. The Servances did not report the tier 1 railroad retirement benefits on their joint 2015 federal income tax return.

Following his retirement, Mr. Servance became eligible for benefits under a long-term disability insurance policy issued by Hartford, whose premiums were paid by Metro-North. The Servances did not report receipt of any Hartford long-term disability payments on their 2015 federal tax return.

The IRS compared the Servances' 2015 federal income tax return to the third-party reports it received and, on the basis of these comparisons, issued a notice of deficiency to the Servances. The notice proposed changes to their 2015 return to reflect $24,334 in taxable tier 1

railroad retirement benefits,[2] an additional $4,406 in taxable wages from Hartford,[3] an additional $61 in unreported taxable dividends, and a $1,469 accuracy-related penalty for an underpayment due to a substantial understatement of income tax under section 6662(a) and (b)(2).

The Servances have conceded their liability for tax on the dividends, and respondent has conceded that they are not subject to the accuracy-related penalty. Therefore, the only issues for our decision are the inclusion in income of the tier 1 railroad retirement benefits and any Hartford long-term disability payments.

## *Discussion*

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). However, in cases of unreported income, the Commissioner must establish an evidentiary foundation connecting the taxpayer to the income-producing activity, or otherwise demonstrate that the taxpayer actually received income. *See Edwards v. Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir. 1982); *Weimerskirch v. Commissioner*, 596 F.2d 358, 361–62 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977). The presumption of correctness for the Commissioner's determinations does not apply if the notice of deficiency is unsupported by any significant evidence. *Schaffer v. Commissioner*, 779 F.2d 849, 858 (2d Cir. 1985), *aff'g in part and remanding in part Mandina v. Commissioner*, T.C. Memo. 1982-34. Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. *See Williams v. Commissioner*, 999 F.2d 760, 763 (4th Cir. 1993), *aff'g* T.C. Memo. 1992-153.

---

[2] Per section 86, recipients of tier 1 railroad retirement benefits typically must include only 85% of the benefits received as gross income ($28,628 × 85% = $24,334).

[3] The notice of deficiency lists Hartford as the issuer of a Form W–2, Wage and Tax Statement, reporting $4,406, and the notice thereby adjusts "[t]axable wages" in a like amount.

I.      *Tier 1 Railroad Retirement Benefits*

Petitioners and respondent have stipulated that Mr. Servance received $28,628 in tier 1 railroad retirement benefits in 2015 from the RRB.  Section 86(a) generally includes a portion of Social Security benefits in gross income, and section 86(d)(1)(B) explicitly includes tier 1 railroad retirement benefits within the meaning of "social security benefits" for this purpose.  On the face of the statute, then, the Servances should not have excluded all of Mr. Servance's tier 1 railroad retirement benefits from their 2015 tax return.

The Servances argue that Mr. Servance's tier 1 railroad retirement benefits are excludable under section 104(a)(1), which excludes "amounts received under workmen's compensation acts as compensation for personal injuries or sickness."  Treasury Regulation § 1.104-1(b) extends the exclusion to amounts paid "under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment."  However, the same regulation clarifies that amounts received as compensation for a "nonoccupational injury" do not qualify for the exclusion.  *Id.*

The statute authorizing Mr. Servance's tier 1 railroad retirement benefits is 45 U.S.C. § 231a, which provides for various retirement and disability annuity payments for current and former U.S. railroad workers.  Although some of the eligibility categories under that statute refer to disability, none requires that the disability have been incurred in the course of the recipient's railroad work.  *Id.*

The Servances' reliance on section 104(a)(1) fails for two reasons.  First, 45 U.S.C. § 231a is neither a workmen's compensation act nor a statute "in the nature of" a workmen's compensation act, as none of its eligibility criteria includes an on-the-job injury or sickness.  The Servances contend that section 104(a)(1) exempts statutory disability benefits for a "public servant in a hazardous position" regardless of the source of the disability.  However, it is well settled that "[a] statute will not be considered akin to a workers' compensation act if it allows for disability payments for any reason other than on-the-job injuries." *Haar v. Commissioner*, 78 T.C. 864, 868 (1982), *aff'd,* 709 F.2d 1206 (8th Cir. 1983); *Green v. Commissioner*, T.C. Memo. 1994-264, 67 T.C.M. (CCH) 3074, 3075-4 (quoting *Haar*, 78 T.C. at 868), *aff'd*, 60 F.3d 142 (2d Cir. 1995); *see also Kane v. United States*, 43 F.3d 1446, 1449 (Fed. Cir. 1994) (finding that the federal judicial disability statute is not "in the nature

of" a workmen's compensation act because it does not distinguish between disabilities related versus unrelated to work activities); *Take v. Commissioner*, 804 F.2d 553, 558 (9th Cir. 1986) (finding that the municipal disability benefits ordinance for police officers and firefighters is not "in the nature of" a workmen's compensation act because the ordinance required no specific evidence that certain illnesses were caused by the recipient's work activities), *aff'g* 82 T.C. 630 (1984).

Second, even if we were to interpret 45 U.S.C. § 231a as providing some aspects of workmen's compensation, the record contains no evidence that Mr. Servance's cancer was caused by his work for Metro-North, rather than being a "nonoccupational" disability. *See* Treas. Reg. § 1.104-1(b). We conclude that Mr. Servance's tier 1 railroad retirement benefits cannot be construed as workmen's compensation within the meaning of section 104(a)(1).

Accordingly, we hold that the Servances are not entitled to exclude Mr. Servance's tier 1 railroad retirement benefits from gross income (other than the 15% excluded by statute). We therefore sustain respondent's determination that these benefits must be included in the Servances' gross income for tax year 2015 to the extent provided by section 86 (i.e., 85% of that amount).

II. *Hartford Long-Term Disability Payments*

Mr. Servance agreed at trial that he was covered by a long-term disability policy from Hartford in 2015. However, petitioners did not stipulate to Mr. Servance's receipt of any amount from Hartford in 2015, and respondent did not provide any substantive evidence of such receipt. The notice of deficiency issued to the Servances purports that Hartford submitted a Form W–2 to the IRS reporting a payment of $4,406 to Mr. Servance in 2015. However, respondent provided to this Court neither a copy of that Form W–2 nor any account transcripts or other evidence to that effect. And even if respondent had provided a copy of the Form W–2, that alone would not have satisfied respondent's threshold burden regarding unreported income. Generally, when a third-party document simply contradicts (without any supporting evidence) a taxpayer's assertion that he did not receive income, that document does not suffice for us to rely on the presumption of correctness normally afforded to a notice of deficiency. *See Portillo v. Commissioner*, 932 F.2d 1128, 1134 (5th Cir. 1991) (holding that a third-party Form 1099 did not, without

more, satisfy the presumption of correctness regarding alleged unreported income), *aff'g in part, rev'g in part* T.C. Memo. 1990-68.[4]

At trial Mr. Servance credibly testified that he was required to pay back any payments he received from Hartford in 2015, and that he did so reimburse Hartford. After trial, we held the record open to receive proof of the 2015 Hartford repayments. The Servances proposed as an exhibit an excerpt from an email string with a third-party recovery agent dated February 2, 2021, which respondent objected to on the basis of hearsay and the rule of completeness. *See* Exhibit 7–P. We conditionally admitted the exhibit for a ruling at a later time and closed the record in the case. Because in small tax cases "any evidence deemed by the Court to have probative value shall be admissible," Rule 174(b), and because the statement in the email affects an interest in property and would likely be admissible under an exception to the hearsay rule, *see* Fed. R. Evid. 803(15), we now admit the exhibit. The email indicates that Mr. Servance was repaying the "Hartford Life Debt" at $1,000 per month beginning on February 3, 2015. This supports Mr. Servance's testimony that he reimbursed Hartford in 2015 for any payments he might have received.

According to the claim-of-right doctrine, if a taxpayer receives a payment under a claim of right and without restrictions, he must include that payment in gross income for the year of receipt, even if he might later be obligated to return it. *James v. United States*, 366 U.S. 213, 219 (1961); *N. Am. Oil. Consol. v. Burnet*, 286 U.S. 417, 424 (1932). The rescission doctrine is an exception to the claim-of-right doctrine. Under the former, even if a taxpayer receives a payment under a claim of right, he need not report it if his right to the amount is rescinded and,

---

[4] We also note the directive of section 6201(d), which may apply here:

> Sec. 6201(d). Required reasonable verification of information returns.—In any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Secretary under subpart B or C of part III of subchapter A of chapter 61 by a third party and the taxpayer has fully cooperated with the Secretary . . . , the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

Subpart C of part III of subchapter A of chapter 61 includes section 6051, which requires employers (and, in some cases, third-party payors) to file copies of Forms W–2 furnished to employees and certain former employees.

within the year of receipt, the parties to the payment are restored "to the relative positions that they would have occupied had no contract been made." *Blagaich v. Commissioner*, T.C. Memo. 2016-2, at \*13 (quoting Rev. Rul. 80-58, 1980-1 C.B. 181); *see also Senyszyn v. Commissioner*, 146 T.C. 136, 146 (2016), *supplemented by* T.C. Memo. 2016-137. Thus, if the Servances' repayments to Hartford in 2015 were of funds received in 2015, the recission doctrine would demand an offset of the gross income dollar-for-dollar by the amount of repayment.

Overall, respondent failed to meet his threshold burden of demonstrating that the Servances actually received any taxable income from Hartford in 2015, and the Servances convinced us that they did not have any such accretion to wealth. We therefore do not sustain respondent's determination that benefits from Hartford of $4,406, or of any other amount, should have been included in the Servances' gross income for tax year 2015.

We have considered all arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*